UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

YES I CAN LICENSED BEHAVIOR ANALYST
PLLC *et al.*,

                              Plaintiffs,

          -v-

GREEN TREE CAPITAL LLC *et al.*,

                              Defendants.

---

24 Civ. 7360 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

This decision resolves two motions to dismiss and a motion for sanctions. In brief, plaintiffs claim that defendants engaged in predatory lending and debt collection practices with respect to a merchant cash advance agreement between the parties. Plaintiffs bring substantive and conspiracy claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1951, *et seq.*, and state law claims of breach of contract, wrongful restraint and execution/trespass to chattel, and under New York Judiciary Law § 487.

For the following reasons, the Court grants the motions to dismiss and denies the motion for sanctions.

1

I.    **Background**[1]

    A.    **The Parties**

        1.    **Plaintiffs**

The eight plaintiffs are entities (or people affiliated with them) that provide education, support, and therapy services to children with autism, special needs, and histories of trauma in the tri-state area and Arizona.  SAC ¶ 83.

Yes I Can Behavior Analyst PLLC ("YIC") is a New York domestic professional limited company that provides educational and support services for students in the tri-state area with special needs.  *Id.* ¶¶ 7, 20.

Triumph Behavior Support LLC ("Triumph") is a New Jersey limited liability company that provides therapeutic services to children and young adults with autism.  *Id.* ¶¶ 8, 21.

Zarephath Inc. ("Zarephath") is an Arizona corporation that provides care for children who have experienced severe trauma.  *Id.* ¶¶ 9, 25.

Yes I Can Services Inc. ("YIC Services") is a New York domestic corporation.  *Id.* ¶ 22.

YICIF LLC ("YICIF") is a New York domestic limited liability company.  *Id.* ¶ 23.

Metropolitan Mental Health PC ("MMH") is a New Jersey professional corporation.  *Id.* ¶ 24.

---

[1] The Court draws the facts in this decision principally from the Second Amended Complaint ("SAC"), Dkt. 35.  *See DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) ("In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint.").  For purposes of resolving the motion to dismiss under Rule 12(b)(6), the Court accepts all factual allegations in the SAC as true, drawing all reasonable inferences in plaintiffs' favor.  *See Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012).

Simcha Feller ("Feller"), a New York resident, is the owner and principal of YIC, Triumph, and Zarephath. *Id.* ¶¶ 15, 91.

Rochel Ita Feller ("Rochel Feller") is also a New York resident. *Id.* ¶ 28.

### 2.    Defendants

Defendants are individuals and entities whom the plaintiffs claim engaged in predatory lending and debt collection practices.

Green Tree Capital LLC ("Green Tree") is a Connecticut limited liability company that operates out of New York. *Id.* ¶¶ 29–30.

Delawho Holdings LLC ("Delawho") is a Delaware limited liability company that runs entities such as Green Tree. *Id.* ¶¶ 31, 190.

Jonathan Braun is a New York resident who controls Delawho and its affiliates. *Id.* ¶¶ 33, 134.  He has been the subject of lawsuits claiming predatory "merchant cash advance" agreements, including one by the New York Attorney General. *Id.* ¶¶ 34, 60.

Yitzchok Wolf (also known as Isaac Wolf) is a New York resident who is a subordinate, associate, or partner of Braun. *Id.* ¶¶ 35–36, 137.

Sara Betyakov (also known as Sarah Beityakov) is a New York resident who works for Braun and Wolf. *Id.* ¶¶ 37–38.  She signs most legal paperwork for Delawho and its affiliates. *Id.* ¶ 39.

Matthew Stafford is a Nevada resident and plays a similar role to Betyakov, executing legal paperwork such as affidavits for confessions of judgment. *Id.* ¶¶ 40–41.

The Court refers to Green Tree, Delawho, Braun, Wolf, Betyakov, and Stafford collectively as the "Green Tree defendants."

Ariel Bouskila and Steven Berkovitch are New York attorneys who represent the Green Tree defendants. *Id.* ¶¶ 42–43. They work at Berkovitch & Bouskila, PLLC, a New York law firm. *Id.* ¶¶ 44, 207. The Court refers to Bouskila, Berkovitch, and Berkovitch & Bouskila, PLLC collectively as the "B&B defendants."

ABC Corporations 1–10 are participants in the scheme whose identities are unknown. *Id.* ¶ 45. John Does 1–10 are Green Tree principals whose identities are unknown. *Id.* ¶¶ 46–47.

### B.    The MCA Agreement

In early 2024, YIC sought a $2 million loan to fund its operations. *Id.* ¶ 93. On March 8, 2024, Green Tree and YIC entered into a merchant cash advance agreement (the "MCA Agreement").[2] *Id.* ¶ 95. It gave YIC an advance of $2.5 million in exchange for Green Tree's purchase of YIC's future receipts until $3,749,999 was repaid. *Id.* ¶ 98. YIC was to repay that amount through daily payments of $62,500 during a 60-day period. *Id.* ¶ 100.[3]

Under the MCA Agreement, Feller was obligated to execute a personal guaranty, an affidavit of confession of judgment for the full repayment amount, and a blanket security interest in all his assets. *Id.* ¶ 102. The agreement also gave Green Tree the irrevocable right, through power of attorney, to withdraw money directly from YIC's bank accounts; prevented YIC from transferring assets or selling its business without Green Tree's permission; obligated YIC to pay Green Tree's attorney's fees; and prohibited Green Tree from obtaining funding from other sources. *Id.* ¶ 104.

---

[2] The SAC contains extensive background factual allegations about the merchant cash agreement industry, defendants' role in it, and earlier lawsuits against defendants. *See* SAC ¶¶ 53–82.

[3] This translates to an interest rate of 525% per annum. SAC ¶ 100.

4

According to the SAC, the MCA Agreement was actually a loan agreement—one that, for numerous reasons, was "criminally usurious," "unconscionable," and "unenforceable." *Id.* ¶¶ 97, 103; *see also id.* ¶ 118 (listing features making agreement a loan). For example, the MCA Agreement set a fixed daily payment of $62,500, dictated by defendants' desired length of payment term, rather than a good faith estimate of YIC's daily revenue. *Id.* ¶ 101. It provided "one-sided terms that prey upon the desperation of businesses," such as power-of-attorney, confession of judgment, and attorney's fees provisions. *Id.* ¶¶ 103–04. It contained a "sham" reconciliation provision, which made it "effectively impossible for [YIC] to use" because it would be placed in default before reconciliation could be performed, and being in default voids the right to reconciliation. *Id.* ¶¶ 105, 114. And it created "no real transfer of risk" to defendants because, in the event YIC missed a daily payment, the entire payment would become immediately due, and defendants would be allowed to foreclose on the collateral. *Id.* ¶ 117.

**C.    Defendants' Breaches and YIC's Default**

From the outset of the transaction between YIC and defendants, defendants "engaged in predatory and fraudulent conduct." *Id.* ¶ 131. Defendants induced plaintiffs to enter into the MCA Agreement, which did not reflect the agreed-upon terms. *Id.* ¶ 132. They then failed to provide the amount promised under that agreement, sending YIC only $2 million while retaining the other $500,000 as purported underwriting and origination fees, even though defendants had not incurred such fees. *Id.* ¶¶ 99, 132. And, in state court proceedings to enforce the agreement, defendants sought more than $700,000 in attorney's fees. *Id.* ¶ 132.

YIC, for its part, paid Green Tree nearly $1 million over less than five weeks—from March 8 to April 10, 2024. *Id.* ¶ 120. On April 15, 2024, however, Green Tree asserted that

YIC had defaulted under the MCA Agreement and commenced state court proceedings. *Id.* ¶ 121.

### D.    State Court Proceedings

On April 15, 2024, Green Tree, through the B&B defendants, applied for the entry of default judgment in state court based on the affidavit of confession signed by Feller pursuant to the MCA Agreement. *Id.* Green Tree obtained a confession of judgment[4] against plaintiffs in the amount of more than $3.5 million, including $700,000 in attorney's fees. *Id.*; *see* Dkt. 38-1 ("First Judgment").[5] Plaintiffs moved to stay enforcement of the judgment, but their request for a preliminary injunction was denied. *Id.* ¶ 125.

On April 22, 2024, plaintiffs filed a separate plenary action, as required by New York law, to vacate the First Judgment. Dkt. 38-2 ("Boddie Order"). The defendants in that action— Green Tree, Stafford, ABC Corporations 1–25, and John Does 1–25—moved to dismiss. *Id.* at 2. On September 20, 2024, Justice Reginald A. Boddie of the New York Supreme Court, Kings County, vacated the First Judgment solely on the ground that the attorney's fees were "grossly disproportionate to the legal services rendered." *Id.* at 4. Justice Boddie dismissed plaintiffs' other causes of action—which sought vacatur based on fraudulent inducement, breach of contract, and procedural errors related to the First Judgment—for failure to state a claim. *Id.* at 7–9.

---

[4] A judgment by confession "may be entered, without an action, either for money due or to become due . . . upon an affidavit executed by the defendant." N.Y. CLPR § 3218.

[5] After entry of the First Judgment, defendants directed subpoenas to Feller's wife and attorneys, commenced a separate action to obtain an order directing the sheriff to sell certain real property owned by Feller, and froze plaintiffs' bank accounts. SAC ¶ 123–24.

6

On September 23 and September 26, 2024, Green Tree obtained two confessions of judgment against plaintiffs, each in the amount of approximately $3 million. Dkt. 38-3 ("Second Judgment"). Consistent with the Boddie Order, Green Tree did not seek attorney's fees. *Id.*

### D.    Procedural History

On September 29, 2024, plaintiffs filed the initial Complaint. Dkt. 1 ("Compl."). It seeks, *inter alia*, vacatur of the Second Judgment, an injunction enjoining defendants from enforcing the MCA Agreement, and repayment of all principal and interest that plaintiffs paid in connection with that agreement. *Id.* at 62–63.

### 1.    Temporary Relief Applications & Interlocutory Appeal

On October 1, 2024, plaintiffs moved for a preliminary injunction and temporary restraining order on the ground that they were "in imminent danger of losing the rest of their business" due to defendants' collection efforts pursuant to the Second Judgment. Dkt. 7 at 2. That day, the Court denied the application, finding "no non-frivolous basis for the requested relief to be issued on an *ex parte* basis," and directing plaintiffs to serve defendants with the moving papers if they sought to continue to pursue temporary relief. Dkt. 9 at 1.

On October 2, 2024, plaintiffs served defendants with a renewed application for temporary injunctive relief. Dkt. 11. On October 9, 2024, the Court denied the motion, finding the application meritless for multiple independent reasons, including that it "overwhelmingly appears that the Court lacks subject matter jurisdiction over the action" because the Complaint seeks vacatur of a state court judgment in federal court, in violation of the *Rooker-Feldman* doctrine. Dkt. 30 at 2. On November 8, 2024, plaintiffs filed an interlocutory appeal of that decision. Dkt. 36.

### 2.    The Instant Motions

*Motions to Dismiss*:  On November 7, 2024, plaintiffs filed the SAC, the operative complaint today, which drops the requests for equitable relief and seeks only damages.  Dkt. 35.[6] On November 25, 2024, the B&B defendants moved to dismiss.  Dkt. 37 ("B&B MTD").  On November 27, 2024, the Green Tree defendants moved to dismiss.  Dkt. 41 ("GT MTD").  On December 18, 2024, plaintiffs opposed.  Dkts. 51 ("Opp'n to B&B"), 52 ("Opp'n to GT").  On January 6, 2025, defendants replied.  Dkts. 55 ("B&B Reply"), 56 ("GT Reply").

*Motion for Sanctions*: On December 11, 2024, the B&B defendants moved for sanctions. Dkt. 44 ("Sanctions Mot.").  On December 26, 2024, plaintiffs opposed.  Dkt. 53 ("Sanctions Opp'n").  On January 2, 2025, the B&B defendants replied.  Dkt. 54 ("Sanctions Reply").

On May 1, 2025, the Court stayed the case pending the Second Circuit's resolution of plaintiffs' interlocutory appeal.  Dkt. 59.  On October 6, 2025, the Circuit dismissed the appeal as moot because "the judgments at issue have been satisfied, and no enforcement actions remain that could be enjoined."  Dkt. 62 at 2.  On November 12, 2025, this Court lifted the stay. Dkt. 66.

## II.    Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A complaint is properly dismissed where

---

[6] Plaintiffs had filed a First Amended Complaint on October 8, 2024, while their application for temporary relief was pending before the Court.  Dkt. 18 ("FAC").

"the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. For the purpose of resolving a motion to dismiss, the Court must assume all well-pled facts to be true, drawing all reasonable inferences in favor of the plaintiff. *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). That tenet, however, "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. A pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## III.    Discussion

Defendants argue that plaintiffs' claims are barred by the *Rooker-Feldman* doctrine and *res judicata*, and that the SAC fails to state claims under RICO and state law. The Court considers these arguments in turn.

### A.    The *Rooker-Feldman* Doctrine

Defendants argue that the Court lacks subject matter jurisdiction to hear plaintiffs' claims because, under the *Rooker-Feldman* doctrine, federal courts cannot "review or undo" state court judgments. B&B MTD at 6–9 (citation omitted); *see also* GT MTD at 6–8. They contend that the SAC effectively seeks vacatur of the Second Judgment, and thus breaches this jurisdictional rule. *Id.* That is wrong.

The *Rooker-Feldman* doctrine reflects "the principle, expressed by Congress in 28 U.S.C. § 1257, that within the federal judicial system, only the Supreme Court may review state-court decisions." *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005); *see generally Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *Dist. of Columbia Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983). As the Second Circuit has explained, the *Rooker-Feldman* doctrine applies where four requirements are met:

9

First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must complain of injuries caused by a state-court judgment. Third, the plaintiff must invite district court review and rejection of that judgment. Fourth, the state-court judgment must have been rendered before the district court proceedings commenced—*i.e.*, *Rooker-Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation.

*Hoblock*, 422 F.3d at 85 (cleaned up) (quoting *Exxon Mobile Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)). "The first and fourth of these requirements may be loosely termed procedural; the second and third may be termed substantive." *Id.*

The procedural requirements are satisfied here.[7] As to the first, the plaintiffs here were all defendants in the state court action, which they lost, requiring them to pay more than $3 million. Second Judgment at 1, 4. As to the second, the confessions of judgment were rendered on September 23 and 26, 2024—several days before plaintiffs initiated this case. *Id.* Accordingly, both requirements are met.

The substantive requirements, however, are not. Those require "that the plaintiff's injuries be caused by the state court judgment and that the asserted claims invite federal review and rejection of that judgment." *Dorce v. City of New York*, 2 F.4th 82, 103 (2d Cir. 2021). The Second Circuit has identified numerous principles to guide this analysis, three of which are salient here. First, "the applicability of the *Rooker-Feldman* turns not on the *similarity* between a party's state-court and federal-court claims (which is, generally speaking, the focus of ordinary preclusion law), but rather on the *causal relationship* between the state-court judgment and the injury of which the party complains in federal court." *McKithen v. Brown*, 481 F.3d 89, 97–98

---

[7] Because the First Judgment was vacated, the relevant state court judgment here is the Second Judgment. *See New Y-CAPP, Inc. v. Arch Cap. Funding, LLC,* No. 18 Civ. 3223, 2020 WL 5549315, at *3 (S.D.N.Y. Sept. 16, 2020) ("Since the judgment entered against [p]laintiffs was vacated, [p]laintiffs are not a 'losing party' for purposes of the *Rooker-Feldman* doctrine and there is no state court 'judgment' for this Court to reject.").

10

(2d Cir. 2007) (emphasis in original). Second, the *Rooker-Feldman* doctrine does not apply where "the state courts merely ratified rather than produced [the plaintiffs'] injuries." *Sung Cho v. City of New York*, 910 F.3d 639, 646 (2d Cir. 2018). Third, "federal courts do not lose jurisdiction merely because 'a federal plaintiff presents some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party.'" *Dorce*, 2 F.4th at 104 (quoting *Exxon Mobil*, 544 U.S. at 293).

Under these principles, the *Rooker-Feldman* doctrine does not divest this Court of subject matter jurisdiction.

First, the injuries alleged in the SAC did not follow from the Second Judgment, but rather from alleged breaches of the MCA Agreement, defendants' inflation of attorney's fees in connection with the First Judgment, and defendants' efforts to collect attorney's fees pursuant to the First Judgment. Because these injuries "existed *prior* in time" to the Second Judgment, they "could not have been 'caused by' those proceedings." *McKithen*, 481 F.3d at 98 (emphasis in original).

Second, and related, the Second Judgment "ratified" plaintiffs' injuries by ordering payment, but did not itself "produce[]" those injuries. *Sung Cho*, 910 F.3d at 646. Plaintiffs had already paid more than $1 million under the MCA Agreement, SAC ¶ 218, and suffered resultant injuries (*e.g.*, forced reduction of their workforce and loss of approximately half their business, *id.* ¶ 219), prior to entry of the Second Judgment. The Second Judgment merely confirmed plaintiffs' further payment obligations. It did not cause plaintiffs' injuries. *See, e.g., Green v. City of N.Y.*, 438 F. Supp. 2d 111, 121 (E.D.N.Y. 2006) (state-court judgment did not cause plaintiffs' injuries where "by approving the settlements, [the courts] at most only ratified, acquiesced in, or left unpunished an anterior decision by [defendant]" (cleaned up)); *Capela v.*

11

*J.G. Wentworth, LLC*, No. 9 Civ. 882, 2009 WL 3128003, at *6 (E.D.N.Y. Sept. 24, 2009) (same where state court order "'simply' approved the Purchase Agreement entered into by the parties"); *Sung Cho*, 910 F.3d at 649 (same where stipulation of settlement was so-ordered by court, such that plaintiffs were "attacking the agreements themselves and the course of conduct that led to them, rather than the state courts' rulings").

Third, although the SAC asks the Court to make findings "inconsistent with the state court judgment"—*i.e.*, that defendants engaged in fraudulent conduct in procuring the MCA Agreement or that the agreement is otherwise invalid—it does not "seek to overturn the state court judgment or have it declared void." *Tasaka v. Bayview Loan Servicing, LLC*, No. 17 Civ. 7235, 2022 WL 992472, at *3 (E.D.N.Y. Mar. 31, 2022). As plaintiffs note in opposing the motions to dismiss, "the [SAC] has removed all references to the Second Judgment, and is premised solely on the First Judgment, which was vacated." Opp'n to B&B at 4. That is in contrast to plaintiffs' first two complaints, which sought vacatur of the Second Judgment and an injunction blocking defendants from enforcing any alleged rights under the MCA Agreement, *see* Compl. at 62–63; FAC at 64–65, prompting the Court to observe that "it overwhelmingly appears that the Court lacks subject matter jurisdiction over the action," Dkt. 30 at 2. The SAC instead seeks direct and consequential damages; treble damages; and attorney's fees and costs. SAC at 57.[8] The SAC therefore does not impermissibly seek reversal or review of a state court judgment. *See, e.g.*, *Tasaka*, 2022 WL 992472, at *4 (no *Rooker-Feldman* bar where plaintiff "explicitly disclaims that she seeks to overturn or declare void the judgment of foreclosure");

---

[8] Defendants' argument to the contrary—that plaintiffs "do not hide that they are continuing to request that this Court vacate the Second Judgment"—lacks merit. B&B MTD at 9. The only citation that defendants provide in support is to a sentence in the SAC that, in context, clearly refers to the First Judgment—not the Second Judgment. *See* SAC ¶ 263.

*Limtung v. Thomas*, No. 19 Civ. 3646, 2021 WL 4443710, at *5 (E.D.N.Y. Sept. 28, 2021) (same, "even if plaintiff's arguments regarding fraudulent documents would undermine a premise" of state court decision).

Because the substantive requirements are not satisfied, the *Rooker-Feldman* doctrine does not apply. The Court thus has subject matter jurisdiction over this case. *See, e.g.*, *Sung Cho*, 910 F.3d at 649 (no *Rooker-Feldman* bar where "[p]laintiffs are attempting to remedy an alleged injury caused . . . prior to any judicial action," rather than "an injury that flows from a state-court judgment"); *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 94–95 (2d Cir. 2015) (same where plaintiffs brought RICO and state-law claims which "speak not to the propriety of the state court judgments, but to the fraudulent course of conduct that defendants pursued in obtaining such judgments"); *McKithen*, 481 F.3d at 98 (same where plaintiff sought "redress for an injury that existed in its exact form prior to the state-court judgment").

### B.      *Res Judicata*

Defendants next argue that plaintiffs' claims are barred by *res judicata* because they seek to impair rights or interests established by the Second Judgment. *See* B&B MTD at 15; GT MTD at 10–12. They are partially correct.

A party moving to dismiss under Rule 12(b)(6) on *res judicata* grounds must show that "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000) (citation omitted). "Under the Full Faith and Credit Act, 28 U.S.C. § 1738, federal courts must give state-court judgments the same preclusive effect as they would receive in courts of the same state." *Burkybile v. Bd. of Educ. Hastings-on-Hudson Union Free*

*Sch. Dist.*, 411 F.3d 306, 310 (2d Cir. 2004). "The law governing the doctrine of *res judicata* in a diversity action is 'the law that would be applied by state courts in the State in which the federal diversity court sits.'" *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 600 F.3d 190, 195 (2d Cir. 2010) (quoting *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001)). The applicable law here is New York's.

Three state court judgments have been rendered that relate to this case, but only one—the Second Judgment—has potentially preclusive effect. The First Judgment has "no preclusive force" because it was "vacated." *Schwartz v. Chan*, 142 F. Supp. 2d 325, 333 (E.D.N.Y. 2001) (citation omitted); *see also Micro-Link, LLC v. Town of Amherst*, 65 N.Y.S.3d 399, 402–03 (4th Dep't 2017). And the Boddie Order lacks preclusive effect because, under New York law, a dismissal for failure to state a claim under N.Y. C.P.L.R. § 3211 is "presumptively not on a case's merits and lacks *res judicata* effect" unless (1) the court so states, *DDR Constr. Servs., Inc. v. Siemens Indus., Inc.*, 770 F. Supp. 2d 627, 647 (S.D.N.Y. 2011)—which Justice Boddie did not—or (2) the dismissal is with prejudice, *Gianatasio v. D'Agostino*, 862 F. Supp. 2d 343, 349 (S.D.N.Y. 2012)—which it was not. Accordingly, the Court considers whether the *res judicata* requirements are satisfied only with respect to the Second Judgment.

### 1. Adjudication on the Merits

"A judgment on the merits for purposes of *res judicata* is not necessarily a judgment based upon a trial of contested facts; it may, for example, be a default judgment, a judgment on stipulation or agreement, or a summary judgment." *Gianatasio*, 862 F. Supp. 2d at 349 (quoting *Dillard v. Henderson,* 43 F. Supp. 2d 367, 369 (S.D.N.Y. 1999)). "Whether a state court judgment was or was not on a case's merits is determined by the rendering state's law." *DDR Const. Servs., Inc.*, 770 F. Supp. 2d at 647.

14

The Second Judgment is a judgment of confession.  Under New York law, a judgment of confession is treated as an adjudication on the merits.  *See, e.g.*, *Tripoint Glob. Equities, L.L.C. v. Fasolino*, No. 13 Civ. 1030, 2013 WL 5677126, at *9 (S.D.N.Y. Oct. 18, 2013) ("New York courts treat confessions of judgments like consent decrees; these are, in turn, treated the same as a final judgment after trial."); *Canfield v. Elmer E. Harris & Co.*, 252 N.Y. 502, 505 (1930) ("A judgment by confession stands in much the same position as one by stipulation or consent and is conclusive adjudication of all matters embraced in it and a bar to any subsequent action on the same claim."); *In re Higgins*, 270 B.R. 147, 156 (Bankr. S.D.N.Y. 2001) (same).  Accordingly, this first requirement is satisfied.

### 2.    Same Parties or Those in Privity With Them

Where there is a final judgment, "*res judicata* bars future litigation between the same parties, or those in privity with them, on the same cause of action."  *Ferris v. Cuevas*, 118 F.3d 122, 126 (2d Cir. 1997).  "It is well-settled in this Circuit that literal privity is not required for *res judicata* to apply."  *Mosha v. Yandex Inc.*, No. 18 Civ. 5444, 2019 WL 5595037, at *5 (S.D.N.Y. Oct. 30, 2019).  Rather, privity is "a functional inquiry, not a formalistic one, and must be applied with flexibility."  *Cho v. Blackberry Ltd.*, 991 F.3d 155, 169–70 (2d Cir. 2021) (citation omitted).

Plaintiffs were all parties to the state court action such that the same-parties requirement is satisfied as to them.  The analysis is more complicated for defendants, only one of whom— Green Tree—was a party to the prior action.  The Court must therefore consider whether each was "in privity" with Green Tree for claim preclusion purposes.

The SAC alleges that the Green Tree defendants worked together to make and collect upon unlawful loans such as the ones extended to plaintiffs in the MCA Agreement.  SAC

¶¶ 201–06. It alleges that they jointly decided which usurious loans to fund, created and implemented merchant agreements, devised "the ultimate payment terms" of such agreements, and signed the affidavits that were then used as the basis for confessions of judgments. *Id.* Because courts routinely find that "alleged co-conspirators are 'in privity' with one another for *res judicata* purposes," the SAC's allegations support a finding of privity as to the Green Tree defendants. *7 W. 57th St. Realty Co., LLC v. Citigroup, Inc.*, No. 13 Civ. 981, 2015 WL 1514539, at *27 (S.D.N.Y. Mar. 31, 2015) (quoting *Discon Inc. v. NYNEX Corp.,* 86 F. Supp. 2d 154, 166 (W.D.N.Y. 2000)), *aff'd*, 771 F. App'x 498 (2d Cir. 2019); *see, e.g., ICICI Bank Ltd. v. Doshi*, No. 19 Civ. 11788, 2024 WL 1242531, at *4 (S.D.N.Y. Mar. 22, 2024) (finding privity in RICO case where only one defendant was named in prior action but others were alleged co-conspirators); *Bass v. Pershing*, No. 25 Civ. 2478, 2025 WL 3281561, at *5 (S.D.N.Y. Nov. 25, 2025) (same), *motion for relief from judgment denied*, No. 25 Civ. 2478, 2025 WL 3443269 (S.D.N.Y. Dec. 1, 2025); *see also In re Teltronics Servs., Inc.*, 762 F.2d 185, 192 (2d Cir. 1985) (entity "was alleged to be a co-conspirator" in prior action and hence "entitled to the *res judicata* effect of that decision" (cleaned up)). The Court may therefore apply *res judicata* to the claims against them.

The same is not true, however, for the B&B defendants. The Second Circuit, applying New York law, has held that "an attorney-client relationship, without more, is insufficient to establish privity between counsel to a party in the prior action and that party itself." *Weir v. Montefiore Med. Ctr.*, No. 23 Civ. 4468, 2023 WL 5747642, at *4 (S.D.N.Y. Sept. 6, 2023) (citation omitted) (citing *Hansen v. Miller*, 52 F.4th 96, 101 (2d Cir. 2022)). Rather, the attorney must have some "cognizable personal interest in the subject of the [prior action]." *Hansen*, 52 F.4th at 101. Here, the B&B defendants did not seek attorney's fees with respect to the Second

Judgment, nor do they point to any circumstances suggesting a particular personal interest in the outcome of that proceeding. They thus are not entitled to the *res judicata* effect of the Second Judgment.[9] *See, e.g., Weir*, 2023 WL 5747642, at *4 (no privity based on attorney-client relationship, "even where the plaintiff's later claim [was] predicated on allegations that the counsel to the party in the prior action and that party itself were involved in misconduct"); *Gurevitch v. Emerald Green Prop. Owners Ass'n, Inc.*, No. 23 Civ. 8156, 2025 WL 642347, at *7 (S.D.N.Y. Feb. 27, 2025) (same where attorney claimed privity with client merely because he "represented its interests in the state court actions"); *Thomas v. McCabe, Weisberg & Conway, LLC*, No. 24 Civ. 7504, 2025 WL 2588749, at *12 (S.D.N.Y. Aug. 15, 2025) (same where attorney did "not claim it had any such cognizable personal interest, nor [did] the facts pled in the [c]omplaint or reflected in the documents submitted on this motion suggest that it did"), *report and recommendation adopted*, No. 24 Civ. 7504, 2025 WL 2592351 (S.D.N.Y. Sept. 8, 2025).

### 3.    Raised or Could Have Been Raised in the Prior Action

New York courts take a "transactional approach" in conducting a *res judicata* analysis. *Yeiser v. GMAC Mortg. Corp.*, 535 F. Supp. 2d 413, 422 (S.D.N.Y. 2008) (citation omitted). "[O]nce a claim is brought to a final conclusion, all other claims arising out of the same

---

[9] The Court also does not find privity based on the possible alternative theory that the B&B defendants were co-conspirators. The SAC does not allege that the B&B defendants were part of the scheme to create and form usurious loan agreements disguised as merchant agreements. Instead, it alleges that they "participated in the fraud by collecting upon this illegal debt and filing papers in state court asserting grossly inflated attorney's fees in order to freeze and extort a larger sum from [p]laintiffs." SAC ¶ 183. They are thus alleged to be co-conspirators in a separate but related fraud perpetrated in the state court proceedings leading to the First Judgment, and other proceedings like it. But because those allegations were not the subject of the Second Judgment, as described below, defendants are not entitled to the *res judicata* effect of that judgment.

17

transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." *Giannone v. York Tape & Label, Inc.*, 548 F.3d 191, 194 (2d Cir. 2008) (quoting *Josey v. Goord*, 849 N.Y.S.2d 497, 499 (N.Y. 2007)). "To determine whether two actions arise from the same transaction or claim, we consider whether the underlying facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 499 (2d Cir. 2014) (citation omitted). "Even if there are variations in the facts alleged or different relief is sought, if the actions are grounded on the same gravamen of the wrong[,] *res judicata* applies." *Yeiser*, 535 F. Supp. 2d at 422.

The Second Judgment resolved the MCA Agreement's validity by requiring plaintiffs to pay Green Tree the millions they purportedly owed under that agreement. Accordingly, to the extent the SAC asserts claims against the GT defendants premised on the invalidity of the MCA Agreement, those claims are barred by *res judicata*. For that reason, the SAC's substantive and RICO conspiracy claims are barred insofar as they are based on the following allegations: the "numerous false statements" in the MCA Agreement, including that "the transaction is not a loan," SAC ¶ 155; the MCA Agreement's excessive interest rate, which violated New York law, *id.* ¶ 178; and defendants' fraudulent inducement of plaintiffs to enter into the MCA Agreement "by misrepresenting the amount of the loan," *id.* ¶ 181. The principles of finality undergirding *res judicata* do not permit plaintiffs to relitigate whether the MCA Agreement was "usurious," "unenforceable," or "fraudulent." *Id.* ¶¶ 176, 181. The Court may, however, consider the SAC's

18

claims insofar as they are premised on allegations of misconduct related to the First Judgment and breaches of the MCA Agreement. *See, e.g., id.* ¶¶ 183, 237–39, 243, 247–50, 258–60, 269.[10]

Plaintiffs' arguments to the contrary are unavailing.

First, plaintiffs argue that, under New York's permissive counterclaim rule, they were not obligated to assert their claims for damages in state court, and that application of *res judicata* would render such counterclaims mandatory. Opp'n to GT at 6–7. Under New York law, "a party is not required to assert all counterclaims in the original action, and instead may assert those claims later in a separate action, in the appropriate forum of the plaintiff's choosing." *Dolan v. Select Portfolio Servicing, Inc.*, No. 13 Civ. 1552, 2014 WL 4662247, at *3 (E.D.N.Y. Sept. 18, 2014). But courts have recognized an exception to this rule where "a subsequent lawsuit . . . amounts to an attack on a judgment previously issued by the state court." *Id.* at *4 (citation omitted); *see also Sweet Constructors, LLC v. Wallkill Med. Dev., LLC*, 965 N.Y.S.2d 145, 146 (2d Dep't 2013) (permissive counterclaim rule does not allow party to "remain silent in one action, then bring a second suit on the basis of a pre-existing claim for relief that would impair the rights or interests established in the first action" (citation omitted)). Although the SAC does not expressly seek to undo the Second Judgment, it does "seek to challenge the validity of its underlying basis"—the MCA Agreement—"which amounts to an attack on that judgment." *Gurevitch*, 2025 WL 642347, at *8.[11] The SAC's claims are therefore

---

[10] Although breaches of the MCA Agreement are conceivably part of the same transaction or occurrence as claims concerning validity of the agreement itself, New York's permissive counterclaim rule prevents the application of *res judicata* as to claims premised on those allegations.

[11] This is consistent with the Court's analysis under the *Rooker-Feldman* doctrine. *See, e.g.*, *Gurevitch*, 2025 WL 642347, at *5, 8 (finding *Rooker-Feldman* not applicable because plaintiffs did "not invite this [c]ourt to review or undo" state court judgment, but claim preclusion applicable because plaintiffs sought to challenge the "underlying basis" for the judgment); *Hinds v. Option One Mortg. Corp.*, No. 11 Civ. 6149, 2012 WL 6827477, at *3–5 (E.D.N.Y. Dec. 6,

barred by *res judicata* to the extent that they are based on the MCA Agreement's invalidity. *See, e.g., Harris v. BNC Mortg., Inc.*, 737 F. App'x 573, 575–76 (2d Cir. 2018) (summary order) (applying *res judicata* where complaint sought declaratory relief that underlying mortgage note was invalid or fraudulently obtained—which "would be inconsistent" with state court judgment); *Hinds v. Option One Mortg. Corp.*, No. 11 Civ. 6149, 2012 WL 6827477, at *5 (E.D.N.Y. Dec. 6, 2012) (same where claim was premised on allegations that defendants "obtained the *underlying mortgage* through predatory lending tactics and fraud" (emphasis in original)), *report and recommendation adopted*, No. 11 Civ. 6149, 2013 WL 132719 (E.D.N.Y. Jan. 10, 2013).

Second, plaintiffs argue that, because the Second Judgment is a confession of judgment, "there were no claims that were actually litigated or which could have been raised by [p]laintiffs." Opp'n to B&B at 13. The lack of actual litigation is immaterial because, unlike issue preclusion, that is not required for *res judicata* to apply. *See EDP Med. Comput. Sys., Inc. v. United States*, 480 F.3d 621, 626 (2d Cir. 2007) ("*Res judicata* does not require the precluded claim to actually have been litigated; its concern, rather, is that the party against whom the doctrine is asserted had a full and fair opportunity to litigate the claim."). And the premise that plaintiffs' claims could not have been raised because the Second Judgment was a confession of judgment is false. Confessions of judgment "are subject to direct challenge at their time of entry"—either by commencing a plenary action for relief, as the plaintiffs did successfully with respect to the First Judgment, or by moving to vacate the judgment. *Tripoint*, 2013 WL 5677126, at *9 & n.5; *see also Maidenbaum v. Marcus*, No. 23 Civ. 3039, 2025 WL 691987, at *9 (E.D.N.Y. Mar. 4, 2025) ("Confessions of judgments . . . are subject to direct challenge at

---

2012) (similar); *see also Lance v. Dennis*, 546 U.S. 459, 466 (2006) ("*Rooker-Feldman* is not simply preclusion by another name," and "applies only in 'limited circumstances'" (quoting *Exxon Mobil Corp.*, 544 U.S. at 291)).

20

the time of their entry."). Because plaintiffs did not avail themselves of these state court avenues for relief, the Second Judgment was rendered final, and plaintiffs cannot now attack it collaterally in federal court. *See Tripoint*, 2013 WL 5677126, at *9 (claim barred by *res judicata* where defendant's "sole basis for his attack on the Confession of Judgment is that the underlying loans are usurious and thus unenforceable"—a "classic merits-based argument, which must be raised in a direct attack on a judgment, not in a collateral attack"); *Maidenbaum*, 2025 WL 691987, at *9 (same where "the time to challenge [the confession of judgment] has expired or the challenge has been denied").

Accordingly, *res judicata* bars much but not all of the SAC's claims. *See, e.g.*, *Gurevitch*, 2025 WL 642347, at *8 (*res judicata* barred claims "to the extent" they were based on certain allegations). The Court considers whether the remaining claims are adequately pled.

## C.    Remaining Grounds for Dismissal

Defendants next argue that the SAC's claims must be dismissed for failure to state a claim. B&B MTD at 15–26; GT MTD at 12–23.[12] The Court finds that dismissal is warranted.

### 1.    Civil RICO

Section 1962(c) of Title 18 makes it "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." To establish a violation of Section 1962(c), *i.e.*, a substantive violation of the RICO statute, a civil plaintiff must show that

---

[12] Defendants make several other arguments for dismissal, including lack of personal jurisdiction due to improper service on the B&B defendants, B&B MTD at 14, and that individual plaintiffs lack standing to bring their claims, *id.* at 26; GT MTD at 24–25. Because the Court dismisses the claims on other grounds, it need not reach these.

he or she was injured by "defendants' (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999) (quoting *Azrielli v. Cohen Law Offs.*, 21 F.3d 512, 520 (2d Cir. 1994)).  As to the fourth element, "Section 1961(1) sets forth an exhaustive list of predicate 'acts' that can constitute a pattern of 'racketeering activity.'" *Williams v. Affinion Grp., LLC*, 889 F.3d 116, 124 (2d Cir. 2018).

Section 1962(d) of Title 18, as relevant here, makes it a crime to conspire to violate Section 1962(c).  To establish a violation of Section 1962(d), *i.e.*, a RICO conspiracy, a civil plaintiff must demonstrate that the alleged coconspirators "knew about and agreed to facilitate" the racketeering activity.  *Baisch v. Gallina*, 346 F.3d 366, 377 (2d Cir. 2003) (quoting *Salinas v. United States*, 522 U.S. 52, 65 (1997)).

"A failure to plead any element of a claim, of course, requires its dismissal." *Black v. Ganieva*, 619 F. Supp. 3d 309, 330 (S.D.N.Y. 2022), *aff'd*, No. 22 Civ. 1524, 2023 WL 2317173 (2d Cir. Mar. 2, 2023).  The Court's analysis thus begins and ends with the predicate acts requirement of both statutory provisions—which is not satisfied here.  *See Edmonds v. Seavey*, No. 8 Civ. 5646, 2009 WL 2949757, at *6 (S.D.N.Y. Sept. 15, 2009) ("[I]t is axiomatic that without . . . an underlying predicate act, a RICO claim cannot survive."), *aff'd,* 379 F. App'x 62 (2d Cir. 2010); *Hecht v. Com. Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir. 1990) ("[T]he core of a RICO civil conspiracy is an agreement to commit predicate acts . . . .").[13]

---

[13] Defendants' arguments for dismissal of the RICO claims largely center on their contention that the MCA Agreement was "not a usurious loan and as such there is nothing unlawful about the debt Green Tree has been trying to collect." GT MTD at 13; *see also* B&B MTD at 20–21. Because *res judicata* bars the RICO claims to the extent that they are premised on the invalidity of the underlying agreement, the Court does not address these arguments.

The SAC alleges several predicate acts: mail and wire fraud, collection of unlawful debt, and the interstate transportation of money obtained by fraud. *Res judicata*, however, prevents the Court from considering most allegations pled in support of those acts.[14] The Court's analysis is thus limited to the allegations that the B&B defendants participated in the fraudulent scheme by "filing papers in state court asserting grossly inflated attorney's fees," SAC ¶ 183; that those defendants have been involved in the filing of 19 cases on behalf of Green Tree and its affiliates, which have resulted in default judgments, *id.* ¶ 207; and that all defendants joined in an overall scheme to enforce and collect upon unlawful debt across 71 actions, 93% of which resulted in default judgments, *id.*

The Second Circuit has not resolved whether litigation activity can serve as the basis for RICO predicate acts. *See State Farm Mut. Auto. Ins. Co. v. Tri-Borough NY Med. Prac. P.C.*, 120 F.4th 59, 98 n.14 (2d Cir. 2024); *Kim v. Kimm*, 884 F.3d 98, 104–05 (2d Cir. 2018). It has, however, acknowledged the substantial policy concerns that follow from answering that question in the affirmative. *See Kim*, 884 F.3d at 104 (noting possibility of inundating federal courts with retaliatory filings, eroding principles of finality, and chilling litigants and lawyers). Accordingly, district courts have widely refrained from sustaining predicate acts based on

---

[14] The SAC's predicate acts are built on allegations related to the invalidity of the MCA Agreement. *See Maidenbaum*, 2025 WL 691987, at *9 (court cannot "look[] behind the judgment[] of confession to consider . . . arguments regarding validity"). The mail and wire fraud allegations claim that the MCA Agreement contained numerous false statements, which were transmitted via interstate mail and wire, and that defendants used interstate wires to collect debts owed under the MCA Agreement and others like it. SAC ¶¶ 160, 163. The unlawful debt collection allegations claim that the MCA Agreement provided for excessive interest, making defendants' collection of the debt related to that agreement unlawful. *Id.* ¶¶ 178–79. And the interstate transportation of money obtained by fraud allegations claim that defendants fraudulently induced plaintiffs to enter into the MCA Agreement by "misrepresenting the amount of the loan, but then charging $500,000 in sham fees." *Id.* ¶ 181.

litigation activity, save in the rare case that alleges a "concerted abuse of the legal system." *Black*, 619 F. Supp. 3d at 342–43 (collecting cases). This is not such a case.

Although the SAC's allegations support that defendants engaged in more than a "single frivolous, fraudulent, or baseless lawsuit" of the sort deemed insufficient in *Kim*, 884 F.3d at 105, the allegations are meaningfully distinct from those in the few cases to find litigation-based predicate acts plausibly pled. *See Azima v. Dechert LLP*, No. 22 Civ. 8728, 2024 WL 4665106, at *20–22 (S.D.N.Y. Sept. 26, 2024) (collecting cases). The SAC does not allege anywhere near the level of systemic abuses alleged in *Sykes*, where a debt-buying company and law firm filed an average of 133 debt collection actions per day over three years in civil court without effecting service of process, leading to mass, and unwarranted, default judgments. *Sykes v. Mel Harris & Assocs., LLC*, 757 F. Supp. 2d 413, 419–20 (S.D.N.Y. 2010). Nor does it allege with the requisite specificity that the default judgments were fraudulently secured by defendants, as in *Sykes* and *Carroll v. U.S. Equities Corp.*, No. 18 Civ. 667, 2020 WL 11563716, at *3 (N.D.N.Y. Nov. 30, 2020). That defendants obtained numerous default judgments does not, without more, suggest impropriety. And although the SAC alleges that the B&B defendants engaged in litigation misconduct by seeking excessive attorney's fees, there is no allegation that they did so in more than plaintiffs' case.[15] These allegations are thus insufficient to support a RICO predicate act. *See, e.g.*, *Snyder v. U.S. Equities Corp.*, No. 12 Civ. 6092, 2014 WL 317189, at *7–8 (W.D.N.Y. Jan. 28, 2014) (no RICO predicates based on litigation activity where defendants allegedly "used the mails and wires in connection with every default judgment that they have fraudulently obtained"); *Butcher v. Wendt*, 975 F.3d 236, 241–42 (2d Cir. 2020)

---

[15] Plaintiffs represent that the SAC "describes how the B&B [d]efendants have asserted (or allowed to be filed) massively inflated attorney's fees in their other cases," Opp'n to B&B at 7, but provide no citation.

24

(same where complaint alleged false statements in court filings and testimony); *Dekom v. Fannie Mae*, 846 F. App'x 14, 21 (2d Cir. 2021) (summary order) (same where complaint alleged defendants attempted to obtain "an illicit double recovery by filing a second foreclosure action" (citation omitted)).

Because the SAC does not allege any predicate acts, it fails to state substantive or RICO conspiracy claims. *See DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001) ("at least two predicate acts must be present to constitute a pattern" of racketeering activity). Accordingly, the Court dismisses those claims. *See, e.g., Jus Punjabi, LLC v. Get Punjabi Inc.*, No. 14 Civ. 3318, 2015 WL 2400182, at *9 (S.D.N.Y. May 20, 2015) ("Having failed to adequately plead any RICO predicate acts, plaintiffs' RICO claims must be dismissed."), *aff'd sub nom. Jus Punjabi, LLC v. Get Punjabi US, Inc.*, 640 F. App'x 56 (2d Cir. 2016); *Rajaratnam v. Motley Rice, LLC*, 449 F. Supp. 3d 45, 80–81 (E.D.N.Y. 2020) (dismissing RICO claims because "fail[ure] to plead at least two acts of racketeering activity . . . dooms each of plaintiff's RICO causes of action"); *In re Platinum & Palladium Commodities Litig.*, 828 F. Supp. 2d 588, 602 (S.D.N.Y. 2011) (similar).

### 2.    State Law Claims

Because the Court dismisses all federal claims, it must determine whether to exercise supplemental jurisdiction over the remaining state law claims.[16] These allege breach of contract, wrongful restraint and execution/trespass to chattel, and violation of New York Judiciary Law § 487.

---

[16] Because the parties are not diverse, the only basis for subject matter jurisdiction is under 28 U.S.C. § 1331 (federal question jurisdiction).

25

Federal district courts have supplemental jurisdiction over state-law claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). However, such jurisdiction is discretionary, *see City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997), and a district court "may decline to exercise supplemental jurisdiction" if, as relevant here, it "has dismissed all claims over which it has original jurisdiction," 28 U.S.C. § 1367(c)(3). In deciding whether to exercise supplemental jurisdiction, a district court is to balance the traditional values of "judicial economy, convenience, fairness, and comity." *FindTheBest.com, Inc. v. Lumen View Tech. LLC*, 20 F. Supp. 3d 451, 461 (S.D.N.Y. 2014) (quoting *Pension Ben. Guar. Corp. ex rel. St. Vincent Catholic Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 727 (2d Cir. 2013)). Both the Second Circuit and the Supreme Court have held that, as a general rule, "when the federal claims are dismissed the 'state claims should be dismissed as well.'" *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 61 (2d Cir. 1998) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)).

There is no basis in judicial economy for the Court to exercise supplemental jurisdiction over the SAC's state law claims. This litigation is still in its early stages and discovery has not commenced. Accordingly, the Court dismisses the remaining claims, without prejudice to plaintiffs' right to pursue them elsewhere. *See, e.g., Americas Choice Veterans Constr. Inc. v. City of N.Y.*, No. 24 Civ. 6522, 2025 WL 1267447, at *7 (S.D.N.Y. May 1, 2025) (declining to exercise supplemental jurisdiction where "federal claims have been dismissed and discovery has not begun"); *Andino v. Gem Quality Constr.*, No. 22 Civ. 5953, 2025 WL 1221025, at *1 (S.D.N.Y. Apr. 25, 2025) (same where "discovery has not begun, and no summary judgment

motions have been filed in this action"); *Mendoza-Lebron v. Adams*, No. 24 Civ. 5154, 2025 WL 1920365, at *9 (E.D.N.Y. July 11, 2025) (similar).[17]

### D.      Sanctions

The B&B defendants seek sanctions against plaintiffs under Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927.

### 1.      Rule 11

"In disposing of a motion for Rule 11 sanctions, a district court 'must adhere to the procedural rules which safeguard due process rights.'" *Castro v. Mitchell*, 727 F. Supp. 2d 302, 305–06 (S.D.N.Y. 2010) (quoting *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.,* 222 F.3d 52, 58 (2d Cir. 2000)).  Salient here, Rule 11(c)(2) provides that "[a] motion for sanctions must be made separately from any other motion."

Because defendants made their Rule 11 motion in the same filing as their motion for § 1927 sanctions, *see* Sanctions Mot., they violated the separate-filing rule.  Accordingly, their motion for Rule 11 sanctions is denied.  *See, e.g., Arriaga v. Gage*, No. 16 Civ. 1628, 2018 WL 1750320, at *14 (S.D.N.Y. Apr. 6, 2018) (denying Rule 11 motion where plaintiff "move[d] contemporaneously" under Rule 11 and § 1927); *Avent v. Solfaro*, 223 F.R.D. 184, 187–88 (S.D.N.Y. 2004) (same); *see also Begonja v. Vornado Realty Tr.*, 159 F. Supp. 3d 402, 414 (S.D.N.Y. 2016) (defendants' Rule 11 motion violated the separate-filing rule and "for that reason alone it must be denied").[18]

---

[17] Although this case has pended before this Court for more than a year, that period is largely attributable to the stay pending plaintiffs' interlocutory appeal—which was dismissed as moot— rather than to any time or resources invested by the Court.

[18] Defendants argue that such denial should be without prejudice.  Sanctions Reply at 3.  But with the Court's having dismissed all claims in the SAC, a future Rule 11 motion would be improper because there is no longer any "pleading or other paper before the Court" to challenge.

## 2.    Section 1927

Section 1927 authorizes courts to require an attorney "who so multiplies the proceedings in any case unreasonably and vexatiously . . . to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." "To impose sanctions under this provision, 'a court must find clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith—that is, 'motivated by improper purposes such as harassment or delay.'" *Kim*, 884 F.3d at 106 (quoting *Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000)). "As a statute with a punitive thrust, § 1927 is to be strictly construed." *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 70 (2d Cir. 1990).

Defendants argue that § 1927 sanctions are warranted because plaintiffs' request for injunctive relief to enjoin enforcement of the Second Judgment was frivolous, and because plaintiffs sought similar relief in state court shortly thereafter. Sanctions Mot. at 24–26. Plaintiffs respond that it was not improper to move for injunctive relief under the circumstances and that the separate filing in state court seeking similar relief does not bear on whether proceedings were multiplied before this Court. Sanctions Opp'n at 22–24.

The Court does not find the "high" standard for § 1927 sanctions satisfied here. *United Realty Advisors, LP v. Verschleiser*, No. 14 Civ. 5903, 2024 WL 4493459, at *4 (S.D.N.Y. Oct. 11, 2024); *see also State of W. Va. v. Chas. Pfizer & Co.*, 440 F.2d 1079, 1092 (2d Cir. 1971) (imposition of § 1927 sanctions "highly unusual"). Although plaintiffs' arguments in support of its motions for injunctive relief lacked merit, *see* Dkts. 9, 30, it does not follow that such motions were "so completely without merit as to require the conclusion that they must have

_____

*Castro*, 727 F. Supp. 2d at 308–09 (collecting cases). Plaintiffs' counsel would not have an "opportunity to correct or withdraw the challenged submission." *Id.* (quoting *In re Pennie & Edmonds LLP*, 323 F.3d 86, 87 (2d Cir. 2003)).

28

been undertaken for some improper purpose such as delay," *Shafii v. Brit. Airways, PLC*, 83 F.3d 566, 571 (2d Cir. 1996); *see also United Realty Advisors, LP v. Verschleiser*, No. 14 Civ. 5903, 2015 WL 3498652, at *2 (S.D.N.Y. June 3, 2015) ("[Section] 1927 is not a catch-all provision designed to penalize attorneys for making bad arguments."). And to the extent defendants' multiplication argument is premised on plaintiffs seeking similar relief in state court, it is unavailing. "The language of § 1927 limits the court's sanction power to attorney's actions which multiply the proceedings in the case before the court. Section 1927 does not reach conduct that cannot be construed as part of the proceedings before the court issuing § 1927 sanctions." *Boyd v. Wells Fargo Bank, N.A.*, No. 19 Civ. 4323, 2021 WL 1812660, at *9 (E.D.N.Y. May 6, 2021) (quoting *In re Case*, 937 F.2d 1014, 1023 (5th Cir. 1991)); *see also In re Galgano*, 358 B.R. 90, 104 (Bankr. S.D.N.Y. 2007) ("Of course, the Court has no authority to exercise either its inherent power or the power under [§] 1927 to sanction a party for conduct that occurred before another court.").

Accordingly, the Court denies defendants' motion for sanctions under § 1927. *See, e.g., Toussaint v. NY Dialysis Servs., Inc.*, 230 F. Supp. 3d 198, 222 (S.D.N.Y. 2022) (declining to impose sanctions where plaintiff's claims were "plainly deficient under existing law" because, under § 1927, court cannot "impose sanctions merely because an attorney is overzealous or simply uneducated in a particular area of law"), *aff'd*, 706 F. App'x 44 (2d Cir. 2017); *(RC) 2 Pharma Connect, LLC v. Mission Pharmacal Co.*, No. 21 Civ. 11096, 2022 WL 4234552, at *5 (S.D.N.Y. Sept. 14, 2022) (same where "allegations were not made after a reasonable investigation and [were] not supported by evidence," but "[t]here [was] no evidence that [p]laintiff was motivated by purposes such as harassment or delay"); *Penta v. Costco Wholesale*

29

*Corp.*, No. 14 Civ. 3587, 2016 WL 1171612, at *2 (E.D.N.Y. Mar. 25, 2016) (same where counsel's conduct "arose more from ineptitude than any improper purpose").

## CONCLUSION

For the reasons stated above, the Court grants the motions to dismiss and denies the motion for sanctions. The dismissal of plaintiffs' RICO claims is with prejudice. The dismissal of plaintiffs' state-court claims is without prejudice to refiling in a court of competent jursdiction.

The Clerk of Court is respectfully directed to terminate the motions pending at dockets 37, 41, and 44, and close this case.

SO ORDERED.

_____
PAUL A. ENGELMAYER
United States District Judge

Dated: December 23, 2025
      New York, New York

30